**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SELWYN MILLS,** | : | |
|     **Plaintiff** | : | **No. 1:20-cv-00266** |
| | : | |
|     v. | : | **(Judge Kane)** |
| | : | |
| **DR. ROGERS, et al.,** | : | |
|     **Defendants** | : | |

**MEMORANDUM**

On February 14, 2020, pro se Plaintiff Selwyn Mills ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Dr. Rogers ("Rogers"), Dr. Pujara ("Pujara"), Dr. Chesonis ("Chesonis"), G. Travers ("Travers"), and six (6) John/Jane Doe Defendants.[1]  (Doc. No. 1.) Presently before the Court is Defendant Pujara's motion to dismiss Plaintiff's complaint.  (Doc. No. 18.)  Plaintiff filed his brief in opposition on June 3, 2020.  (Doc. No. 31.)  Defendant Pujara has filed neither a reply nor a motion for an extension of time to do so.  Accordingly, because the time period for filing a reply has expired, the motion to dismiss is ripe for disposition.  For the reasons that follow, the Court will deny Defendant Pujara's motion to dismiss.

**I.   BACKGROUND**

Plaintiff alleges that in July of 2017, he went to the medical department at SCI Mahanoy for a quarterly examination where Defendant Rogers "completed a routine blood test for Prostate Specific Antigen ('PSA'), resulting in an elevated PSA level."  (Doc. No. 1 at 7.)  On August 7, 2017, Defendant Rogers referred Plaintiff to Defendant Pujara for an oncology follow-up.  (Id.)

---

[1] On June 3, 2020, Plaintiff voluntarily dismissed Travers and the four (4) John/Jane Does from New York as Defendants in the above-captioned action.  (Doc. No. 32.)

On August 22, 2017, Plaintiff was taken to Defendant Pujara's office in Pottsville, Pennsylvania, for a second PSA test and a biopsy. (Id.) Plaintiff maintains that on November 2, 2017, Defendant Pujara "verbally reported the results of the biopsy to Dr. Rogers by telephone, but did not transmit or otherwise forward the written report to medical staff at SCI Mahanoy." (Id. at 8.) Plaintiff did not receive the biopsy results but was scheduled for a chronic care appointment on January 29, 2018. (Id.)

On November 3, 2017, Plaintiff was transferred to the jail in Broome County, New York, "without John Doe #1 ensuring that [his] full and complete medical records accompanied [him] to the receiving facility." (Id.) Plaintiff was transferred with a supply of penicillin to prevent infection from the biopsy procedure. (Id.) On December 7, 2017, Plaintiff was transferred to the Rensselaer County, New York, jail. (Id.) While there, Plaintiff told Defendant Dr. Jane Doe #2 about his elevated PSA level and the biopsy. (Id.) He maintains that Defendant Dr. Jane Doe #2 contacted the medical department at SCI Mahanoy to request the biopsy results, but received only "stale information indicating that a biopsy lab test had been conducted." (Id.) Defendant Dr. Jane Doe #2 performed another PSA test, which resulted in an "extremely elevated PSA level." (Id.) Plaintiff alleges, however, that she did not refer him to an oncologist or for any "further curative treatment." (Id.)

Plaintiff alleges that on January 29, 2018, while he was still at the Rensselaer County Jail, Defendant Rogers discovered that Defendant Jane Doe #2 had not scanned the biopsy results into his medical record. (Id. at 9.) Defendant Rogers "wrote to Dr. Pujara to obtain the consult results and scheduled [Plaintiff] for MD Line upon [his] pending return to SCI Mahanoy." (Id.) In February of 2018, Plaintiff was transferred to the Metropolitan Detention Center in Brooklyn, New York ("MDC"). (Id.) During intake, Plaintiff notified Defendant Dr. John Doe #4 about

2

the previous PSA tests. (Id.) Defendant Dr. John Doe #4 scheduled Plaintiff for "another blood test which subsequently resulted in an extremely elevated PSA level with a range higher than 50." (Id.) When Defendant Travers learned of the PSA test results, he told Defendant Dr. John Doe #4 that Plaintiff should be immediately sent to Brooklyn Hospital for curative treatment. (Id.) While at the hospital, Plaintiff underwent a bone scan, CT scan, and PET scan. (Id.) Hospital staff, however, refused to conduct a second biopsy and advised Defendant Dr. John Doe #4 to obtain the results of the previous biopsy from SCI Mahanoy. (Id.)

In April of 2018, Plaintiff complained to the captain of the medical department at MDC that he had not heard back about his biopsy results. (Id.) The captain called SCI Mahanoy to request those results. (Id.) Defendant Jane Doe #2 scanned the biopsy results into SCI Mahanoy's computer system on April 27, 2018. (Id. at 9-10.) Defendant Rogers informed the captain that Plaintiff had stage 3 prostate cancer. (Id. at 10.) The captain informed Plaintiff and Defendants Dr. John Doe #4 and Travers of the biopsy results that same day. (Id.) Plaintiff subsequently returned to Brooklyn Hospital where he elected to undergo a prostatectomy using robotic procedures. (Id.) After Plaintiff returned to MDC, Defendant Travers told Plaintiff that he was making arrangements for Plaintiff to undergo the procedure and that Plaintiff would be transferred to FCI Butner for post-operative treatment. (Id.) Days later, Plaintiff saw Defendant Jane Doe #3, a Registered Nurse at the MDC, when she told Plaintiff "not to look at the information on her computer screen." (Id.) Plaintiff alleges that Defendant Jane Doe #3 said that Plaintiff would not be at the MDC "long enough to justify the [exorbitant] expense associated with providing prostatectomy by robotic procedure." (Id.)

In May of 2018, Plaintiff filed a grievance regarding a delay in providing treatment for his prostate cancer. (Id.) He alleges that on July 16, 2018, he was "abruptly transferred from

MDC back to SCI Mahanoy without receiving a prostatectomy, in addition to being transferred without [his] medical records." (Id.) On August 7, 2018, Plaintiff was taken to see Defendant Pujara, where he informed Defendant Pujara about the treatment he had received while at the MDC and about his decision to undergo a prostatectomy with robotic procedures. (Id.) Defendant Pujara relayed that information to Defendant Rogers. (Id. at 11.) Subsequently, Plaintiff met with Defendant Rogers, who informed Plaintiff that he had to be seen by Defendant Chesonis through a telemedicine consult and that he was still waiting for copies of the bone scan, CT scan, and PET scan to be sent to SCI Mahanoy. (Id.)

Plaintiff filed a grievance on August 14, 2018, complaining that he had experienced a ten (10)-month delay in providing treatment for his cancer. (Id.) On August 17, 2018, Plaintiff met with Defendant Chesonis by a telemedicine consult. (Id.) Defendant Chesonis ordered a second bone scan, CT scan, and a PET scan, in addition to an MRI of Plaintiff's pelvis, an esophagogastroduodenoscopy ("EGD"), and a follow-up meeting with oncologist Dr. Miceli. (Id.) Plaintiff alleges that during this meeting, Defendant Chesonis "questioned [him] about whether or not [Plaintiff] was going to sue him." (Id.) In February of 2019, seven (7) months after he had returned to SCI Mahanoy, Plaintiff had a prostatectomy with robotic procedures. (Id.)

Based on the foregoing, Plaintiff alleges violations of his rights under the Eighth Amendment as well as his due process rights under the Fourteenth Amendment. (Id. at 13-14.) Specifically, Plaintiff alleges that the SCI Mahanoy Defendants (Rogers, Pujara, Jane Doe #1, Chesonis, and John Doe #1-CHCA) violated his rights by failing to stay his transfer to New York until he received curative treatment, failing to relay all medical information to the receiving facility, and failing to maintain custody and control of his medical records. (Id. at 13.) Plaintiff

alleges that the New York Defendants (Dr. Jane Doe #2, John Doe #3, Dr. John Doe #4, Jane Doe #2, and Travers) violated his rights in the same way. (Id. at 13-14.) With respect to relief, Plaintiff seeks damages. (Id. at 16.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and may be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III. DISCUSSION

Defendant Pujara seeks dismissal of Plaintiff's complaint on the bases that: (1) the Eighth Amendment preempts Plaintiff's Fourteenth Amendment due process claim and (2) Plaintiff fails to state an actionable Eighth Amendment claim against Defendant Pujara because he fails to establish that Defendant Pujara was acting under the color of state law, fails to allege any personal involvement by Defendant Pujara, and fails to allege that Defendant Pujara was deliberately indifferent to his medical needs. (Doc. No. 19 at 5-13.) The Court considers Defendant Pujara's arguments below.

### A. State Action

The Court considers first whether Plaintiff has failed to establish that Defendant Pujara was acting under the color of state law for purposes of liability under § 1983. Defendant Pujara maintains that he did not act under color of state law because he used his own judgment to evaluate and treat Plaintiff in his private office, obtained a biopsy, and referred those results to Defendant Rogers. (Doc. No. 19 at 8-9.) He asserts that he "was not involved in Plaintiff's transfer to an out-of-state facility or the custody, care, and control of Plaintiff's medical records." (Id. at 9.)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013). With respect to private actors, the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." See Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks and citation omitted). The Third Circuit has outlined three (3) broad tests to determine whether state action exists:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)). The inquiry under each test is fact-specific. See Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).

"With respect to medical services provided to inmates, it is clear that private physicians who are contracted to provide health care services inside prison walls will be considered state actors." Moy v. DeParlos, No. 1:18-cv-1575, 2019 WL 4221072, at *6 (M.D. Pa. Sept. 5, 2019). In West v. Atkins, 482 U.S. 42 (1988), the Supreme Court explicitly extended § 1983 liability to private physicians who contract to provide medical services inside prisons. The West Court stated:

> The fact that the State employed [the doctor] pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter this analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [a doctor]; and respondent [doctor] voluntarily assumed that obligation by contract.

West, 487 U.S. at 55-56; see also Conner v. Donnelly, 42 F.3d 220, 224-25 (4th Cir. 1994) (noting that "[a] physician under contract . . . to provide medical services to prison inmates, but not employed directly by the state, acts under the color of state law when treating an inmate" because medical personnel "can treat a prisoner only with the state's authorization").

This Court has previously recognized that "it is unsettled whether a doctor who works for a private medical facility can nonetheless be considered a state actor for having treated a prisoner." See Moy, 2019 WL 4221072, at *6 (citing cases). Moreover, several courts have concluded that the issue of whether a private physician's actions amount to state action for purposes of § 1983 should not be resolved on a motion to dismiss but, rather, requires development of a factual record. See, e.g., Rodriguez v. Plymouth Ambulance, 577 F.3d 816,

9

822-32 (7th Cir. 2009) (reversing the dismissal of an inmate-plaintiff's complaint on state action grounds and calling for factual development); Tatsch-Corbin v. Feathers, 561 F. Supp. 2d 538, 543-44 (W.D. Pa. 2008) (denying a motion to dismiss filed by a private physician on state action grounds). In the instant case, viewing the compliant in the light most favorable to Plaintiff, the Court concludes that Plaintiff adequately alleges that Defendant Pujara is a state actor. The Court, therefore, will deny Defendant Pujara's motion to dismiss on state action grounds.

### B. Fourteenth Amendment Claim

Defendant Pujara argues that Plaintiff's Fourteenth Amendment due process claims must be dismissed because they are preempted by the Eighth Amendment. (Doc. No. 19 at 5-6.) Under the "more-specific-provision-rule" established by the United States Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833 (1998), "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." See Betts v. New Castle Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010) (quoting Lewis, 523 U.S. at 843-44). Relying upon this doctrine, Defendant Pujara asserts that because "the gravamen of Plaintiff's claim is that the deliberate indifference of the Defendants to his serious medical needs violated his Eighth Amendment rights, his claim is properly analyzed under that amendment, rather than the Due Process clause." (Doc. No. 19 at 6.)

In response, Plaintiff asserts that the Fourteenth Amendment protects his right to informed consent concerning medical procedures and that Defendant Pujara violated this right by failing to transmit vital medical records in a timely fashion. (Doc. No. 31 at 4-8.) This Court has previously recognized that "the Eighth Amendment does not define the total universe of legal

rights applicable to inmates in a medical setting." See Leaphart v. Prison Health Servs., Inc., No. 3:10-cv-1019, 2010 WL 5391315, at *6 (M.D. Pa. Nov. 22, 2010), report and recommendation adopted, 2010 WL 5391188 (M.D. Pa. Dec. 22, 2010).  Courts have recognized that the "Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body, the related right to refuse unwanted medical treatment, and . . . the right to sufficient information to intelligently exercise those rights."  See White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990) (internal citations omitted).  The Third Circuit has held that "convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives.  The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests."  See id. at 113; see also Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006) (concluding that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment").  "To establish a violation of the constitutional right to medical information, a prisoner must satisfy an objective reasonableness standard, must demonstrate that the defendant acted with the requisite state of mind, and must make a showing that the lack of information impaired his right to refuse treatment."  See Pabon, 459 F.3d at 250.  Construing the complaint in the light most favorable to Plaintiff, as the Court must when considering a motion to dismiss, the Court concludes that Plaintiff has set forth a plausible Fourth Amendment due process claim regarding informed consent against Defendant Pujara at this time.  Accordingly, Defendant Pujara's motion to dismiss will be denied with respect to Plaintiff's Fourteenth Amendment due process claims.

### C. Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs. See Farmer, 511 U.S. at 834, 837; Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Rouse, 182 F.3d at 197.

Because only egregious acts or omissions may violate this standard, mere medical malpractice will not result in an Eighth Amendment violation. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir.

12

2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights."). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician. See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference. See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Moreover, a prison doctor's use of a treatment regimen different than that prescribed by a private physician does not necessarily amount to deliberate indifference. See Johnson v. Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (citing McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)). The question is, therefore, "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants." See Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

Defendant Pujara maintains that Plaintiff has failed to state a plausible Eighth Amendment claim against him because Plaintiff has not alleged any personal involvement by Defendant Pujara and because Plaintiff has not alleged any deliberate indifference to his medical needs. (Doc. No. 19 at 9-13.) The Court disagrees with Defendant Pujara. In his complaint,

Plaintiff alleges that in July of 2017, he reported to the medical department at SCI Mahanoy for a quarterly examination where Defendant Rogers "completed a routine blood test for Prostate Specific Antigen ('PSA'), resulting in an elevated PSA level." (Doc. No. 1 at 7.) On August 7, 2017, Defendant Rogers referred Plaintiff to Defendant Pujara for an oncology follow-up. (Id.) On August 22, 2017, Plaintiff was taken to Defendant Pujara's office in Pottsville, Pennsylvania, for a second PSA test and a biopsy. (Id.) Plaintiff maintains that on November 2, 2017, Defendant Pujara "verbally reported the results of the biopsy to Dr. Rogers by telephone, but did not transmit or otherwise forward the written report to medical staff at SCI Mahanoy." (Id. at 8.) Plaintiff did not receive the biopsy results but was scheduled for a chronic care appointment on January 29, 2018. (Id.) Overall, Plaintiff maintains that Defendant Pujara delayed in transmitting the biopsy results to medical staff at SCI Mahanoy, which led to a delay in his treatment for stage 3 prostate cancer. Construing these allegations in the light most favorable to Plaintiff, as the Court must do for purposes of a motion to dismiss, the Court concludes that Plaintiff has alleged an adequate Eighth Amendment claim against Defendant Pujara at this time. See Rouse, 182 F.3d at 197 (noting that deliberate indifferences may exist when an official delays necessary medical treatment or prevents a prisoner from receiving needed or recommended treatment); see also Brown v. Coughlin, 758 F. Supp. 876, 882 (S.D.N.Y. 1991) (noting that deliberate indifference can be based upon a "failure to transfer necessary medical records in a timely fashion"). The Court, therefore, will deny Defendant Pujara's motion to dismiss with respect to Plaintiff's Eighth Amendment claims.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant Pujara's motion to dismiss (Doc. No. 18) will be denied. An appropriate Order follows.