**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SELWYN MILLS,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-00266** |
| | : | |
| v. | : | **(Judge Kane)** |
| | : | |
| **DR. ROGERS, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court is Defendant Dr. Pujara ("Pujara")'s motion to dismiss (Doc. No. 55) pro se Plaintiff Selwyn Mills ("Plaintiff")'s amended complaint (Doc. No. 52). The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will grant the motion.

**I.     BACKGROUND**

**A.     Procedural History**

Plaintiff, who is currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned case on February 14, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants Dr. Rogers ("Rogers"), Pujara, Dr. Chesonis ("Chesonis"), G. Travers ("Travers"), and six (6) John and Jane Doe individuals. (Doc. No. 1.) Plaintiff also paid the full filing fee. (Id.) In an Order dated February 19, 2020, the Court specially appointed the Clerk of Court to serve a copy of the complaint, notice of lawsuit, request for waiver of service of summons, and waivers on Defendants. (Doc. No. 7.) Defendant Pujara filed a motion to dismiss Plaintiff's complaint on April 28, 2020. (Doc. No 18.) After receiving an extension of time (Doc. Nos. 25, 26), Defendant Rogers filed an answer to the complaint on June 12, 2020 (Doc. No. 35). On June 3,

2020, Plaintiff filed a notice of voluntary dismissal as to Defendants Travers, Dr. Jane Doe #2, John Doe #3, Dr. John Doe #4, and Registered Nurse Jane Doe #2.  (Doc. No. 32.)

In a Memorandum and Order dated August 4, 2020, the Court denied Defendant Pujara's motion to dismiss and directed him to file an answer to Plaintiff's complaint within fourteen (14) days.  (Doc. Nos. 38, 39.)  Specifically, the Court concluded that: (1) Plaintiff had adequately alleged that Defendant Pujara was a state actor; (2) Plaintiff had set forth a plausible Fourteenth Amendment due process claim regarding informed consent; and (3) Plaintiff had adequately alleged an Eighth Amendment deliberate indifference claim.  (Doc. No. 38 at 8-14.)  On August 12, 2020, Defendant Chesonis filed a motion to dismiss or, in the alternative, for summary judgment.  (Doc. No. 42.)  A day later, Plaintiff filed a motion for leave to file an amended complaint (Doc. No. 45), to which he attached his proposed amended complaint.  Plaintiff sought leave to file an amended complaint because he "mistakenly identified Dr. Mathew Micelli as Dr. Chesonis" and sought to identify Jane Doe #1 as Carey Ritsko and John Doe #1 as John Steinhart.  (Id. at 1-2.)  He also sought to add Wellpath, a private corporation providing medical care to inmates at SCI Mahanoy, and Jenna Williams, a physician's assistant, as Defendants in the above-captioned case.  (Id.)  Defendant Pujara filed his answer to Plaintiff's initial complaint on August 18, 2020.  (Doc. No. 48.)  In an Order dated August 31, 2020, the Court granted Plaintiff's motion for leave to file an amended complaint, directed service of the amended complaint upon the newly named Defendants, denied Defendant Chesonis' motion to dismiss or, in the alternative, motion for summary judgment as moot, and directed Defendants Rogers and Pujara to answer or otherwise respond to the amended complaint within fourteen (14) days.  (Doc. No. 53.)  Defendant Pujara filed the instant motion to dismiss on September 14, 2020.  (Doc. No. 55.)

## B.     Summary of Plaintiff's Amended Complaint

On August 7, 2017, Defendant Rogers referred Plaintiff to Defendant Pujara, a urology and oncology specialist, for an evaluation and possible biopsy of Plaintiff's prostate. (Doc. No. 52 ¶ 16.) Defendant Rogers' referral was based upon significant increases in Plaintiff's Prostate Specific Antigen ("PSA"). (Id.) Defendant Micelli authorized that referral twelve (12) hours after it was requested. (Id.) On August 22, 2017, Plaintiff was taken to Defendant Pujara's office, where Defendant Pujara conducted a physical examination and "issued orders for [a] PSA test to be repeated in two weeks." (Id. ¶ 17.)

On September 1, 2017, Plaintiff "submitted a § 2255 Petition for Writ of Habeas Corpus wherein he voluntarily waived extradition in support of his request for speedy resolution of federal criminal charges pending against him the United States District Court for the Northern District of New York." (Id. ¶ 18.) On September 20, 2017, Plaintiff received the results from the blood test Defendant Pujara conducted on August 22, 2017. (Id.) Those results indicated a "serum PSA of 19." (Id.) On October 11, 2020, Defendant Rogers referred Plaintiff to Defendant Pujara for an "off-site follow up office visit with procedures related to biopsy of the prostate." (Id. ¶ 19.)

On October 24, 2017, Plaintiff was transported to Defendant Pujara's office, where "four needle biopsies of the left and right side[s] of [his] prostate were collected." (Id. ¶ 20.) The samples were sent to the oncology department at the Schuylkill Medical Department. (Id.) They were also sent to Genpath for a "solid tumor immunohistochemical analysis." (Id.) After Plaintiff returned to SCI Mahanoy, Defendant Rogers reviewed Defendant Pujara's consult notes and requested that Plaintiff be scheduled for a follow-up examination with Defendant Pujara on November 7, 2017. (Id. ¶ 21.) Plaintiff alleges that Defendants Rogers and Micelli then failed to

3

ensure that Defendant Pujara's October 24, 2017 consultation record "was uploaded into the comp[u]ter system for review by other medical professionals." (Id. ¶ 22.)

On October 25, 2017, the Schuylkill Medical Center drafted a pathology report indicating that examination of the biopsy sampled "revealed results consistent with edenocarcinoma of the prostate with a Gleason score of 6 or 7, which is medically equivalent to Stage 3 Prostate Cancer." (Id. ¶ 23.) The report was faxed to Defendant Pujara on November 1, 2017. (Id. ¶ 24.) Defendant Pujara faxed a copy of the report to Defendant Steinhart that same day. (Id. ¶¶ 24, 70.) Plaintiff alleges that Defendant Steinhart failed "to document the reception and results of the pathology report as a progress note in [Plaintiff's] medical record or otherwise upload the pathology report into the computer system for review by other medical professionals." (Id. ¶ 24.)

Plaintiff alleges that Defendant Steinhart had notice that the United States Marshals Service was scheduled to pick up Plaintiff on November 3, 2017 for transfer to a federal facility in New York. (Id. ¶ 25.) According to Plaintiff, Defendants Rogers and Steinhart failed to include progress notes regarding Plaintiff's prostate condition in his medical record before he was transferred. (Id.) Plaintiff maintains that the form used to transfer his medical information failed to indicate that the immunohistochemical biopsy analysis was still pending and that Plaintiff had a follow-up appointment with Defendant Pujara scheduled for November 7, 2017. (Id. ¶ 29.) According to Plaintiff, Defendant Steinhart failed to amend the form to include that information. (Id. ¶ 30.) Plaintiff maintains that but for this deliberate indifference, he "would have petitioned the federal court for stay/and or discharge from voluntary extradition" because his medical condition made a transfer "without therapeutic treatment extremely dangerous." (Id. ¶ 31.)

Plaintiff was subsequently transferred to the Rensselaer County Jail ("RCJ") in Troy, New York.  (Id. ¶ 32.)  During intake, Plaintiff informed medical staff "about his unresolved medical problems pertaining to significantly elevated serum PSA, and that a biopsy of the prostate had been collected at SCI-Mahanoy, but he did not know the results."  (Id. ¶ 34.)  The doctor contacted Defendant Steinhart to obtain a copy of the pathology and biopsy reports.  (Id.)  Plaintiff alleges that Defendants Steinhart and Ritsko sent "stale and incomplete information indicating that a biopsy had been collected without stating any test results."  (Id.)  The doctor at RCJ then "took another blood test which resulted in elevated serum PSA."  (Id. ¶ 35.)  Plaintiff, however, was transferred to the Metropolitan Detention Center in Brooklyn, New York ("MDC"), on January 1, 2018, prior to receiving follow-up care.  (Id.)

Plaintiff alleges that meanwhile, Defendant Williams held a chronic care clinic, without Defendant Rogers being present, on January 29, 2018.  (Id. ¶ 36.)  At that time, she discovered that the biopsy and pathology reports had not been uploaded to Plaintiff's medical record.  (Id.)  Defendant Williams wrote to Defendant Pujara to obtain the consult results and scheduled Plaintiff to meet with Defendant Rogers upon his return to SCI Mahanoy.  (Id.)  Plaintiff alleges that Defendant Pujara failed to timely provide copies of the two (2)-page Biopsy Procedure Note that he created on October 24, 2017, as well as a copy of the Solid Tumor Immunohistochemical Analysis.  (Id. ¶ 37.)

On February 7, 2018, while at MDC, Plaintiff underwent another blood test, which "resulted in a serum PSA of 32.8."  (Id. ¶ 39.)  Medical Director Travers scheduled Plaintiff to be taken to the urology clinic at Brooklyn Hospital on April 26, 2018.  (Id. ¶ 40.)  Plaintiff alleges that at some time between January 29, 2018 and April 26, 2018, Defendants Steinhart and Williams "received from either [Defendant] Pujara or the Schuylkill Medical Center[] written

5

copies of the Procedure Note created by [Defendant] Pujara on October 24, 2017 . . . , the Solid Tumor Immunohistochemical Analysis . . . , and a second Pathology Report." (Id. ¶ 42.) On April 26, 2018, Plaintiff was taken to the urology clinic at Brooklyn Hospital. (Id. ¶ 45.) He explained that he had undergone a prostate biopsy six (6) months earlier, but that he had not been given the results before his transfer. (Id.) MDC subsequently contacted SCI Mahanoy to request a copy of Plaintiff's results. (Id. ¶ 46.) On April 27, 2018, MDC received a fax containing the requested information. (Id. ¶ 55.) Plaintiff was referred for follow-up care at the Brooklyn Hospital on May 10, 2018. (Id. ¶ 56.) He was transferred back to SCI Mahanoy on July 16, 2018. (Id. ¶ 64.)

On August 7, 2018, Plaintiff met with Defendant Pujara and informed him that "while on transfer . . ., he had a bone scan, CT scan, and PET scan, but did not know the results." (Id. ¶ 67.) That same day, Defendant Rogers asked Defendant Ritsko to obtain Plaintiff's medical records from MDC. (Id.) On August 14, 2018, Plaintiff filed a grievance, complaining that he had experienced a ten (10)-month delay in receiving treatment for his cancer. (Id. ¶ 68.) Subsequently, a doctor at the Geisinger Medical Center diagnosed Plaintiff with LA Grade Esophagitis after performing an Upper GI Endoscopy on October 19, 2018. (Id. ¶ 71.)

Based on the foregoing, Plaintiff alleges violations of his rights under the Eighth and Fourteenth Amendments. (Id. at 21-23.) With respect to Defendant Pujara, Plaintiff alleges that Defendant Pujara violated his Eighth Amendment rights by demonstrating deliberate indifference to continuity of care "predicated on an unreasonable 6 to 10 month delay in providing diagnostic and therapeutic treatment of Stage 3 Prostate Cancer." (Id. at 22.) He also avers that Defendant Pujara violated his Fourteenth Amendment due process right to seek a stay from voluntary

extradition.  (Id. at 23.)  Plaintiff seeks damages as well as declaratory and injunctive relief.  (Id. at 24.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and may be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.   Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

8

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III.   DISCUSSION

Defendant Pujara seeks dismissal of Plaintiff's complaint on the bases that Plaintiff fails to state actionable Fourteenth and Eighth Amendment claims against him. (Doc. No. 56 at 7-18.) The Court considers Defendant Pujara's arguments below.

#### A.   Fourteenth Amendment Claim

As this Court noted previously, the "Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body, the related right to refuse unwanted medical treatment, and . . . the right to sufficient information to intelligently exercise those rights." See White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990) (internal citations omitted). The Third Circuit has held that "convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests." See id.

9

at 113; see also Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006) (concluding that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment"). "To establish a violation of the constitutional right to medical information, a prisoner must satisfy an objective reasonableness standard, must demonstrate that the defendant acted with the requisite state of mind, and must make a showing that the lack of information impaired his right to refuse treatment." See Pabon, 459 F.3d at 250. "If a prisoner still would have accepted the proposed treatment, even if he had been given all of the necessary information regarding that treatment, then his right to refuse treatment has not been impaired, and the deprivation of medical information is of no consequence." Id. at 251-52.

Defendant Pujara maintains that by "amending the most significant fact pertaining to [Defendant] Pujara, and confirming that [Defendant] Pujara forwarded Plaintiff's biopsy report to SCI-Mahanoy the day following receipt of same, Plaintiff has eliminated any plausible basis to assert a Fourteenth Amendment informed consent claim." (Doc. No. 56 at 8-9.) He asserts that Plaintiff's "instant claim is inapposite to a lack of informed consent claim" because Plaintiff is, instead, asserting a delay in receiving treatment. (Id. at 10.) The Court agrees with Defendant Pujara. At no point in Plaintiff's amended complaint does he allege facts suggesting that a lack of information impaired his right to refuse treatment for prostate cancer. Rather, Plaintiff suggests that had he been timely informed of the biopsy results, he would have sought a stay of his transfer to New York. (Doc. No. 52 at 23.) Plaintiff's claim, therefore, is not that he would have refused treatment, but that he was not provided with the opportunity to receive treatment in

10

a timelier fashion. Accordingly, Plaintiff's Fourteenth Amendment claim fails as a matter of law, and the Court will grant Defendant Pujara's motion to dismiss with respect to this claim.[1]

### B.    Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575,

---

[1] As Defendant Pujara points out in his reply brief, Plaintiff's brief in opposition fails to respond to Defendant Pujara's argument that Plaintiff's claim that treatment was delayed is inapposite to a claim for lack of informed consent. (Doc. No. 67 at 4 n.3.) Rather, Plaintiff argues that "the date [Defendant] Pujara 'received' the biopsy report, and then 'forwarded' it to medical staff at SCI-Mahanoy involves evidence outside the four corners of the amended complaint and exhibits submitted in support thereof." (Doc. No. 66 at 3.) Plaintiff avers that he does not object to Defendant Pujara's dismissal "[i]f the written pathology report generated from [Plaintiff's] urology visit on October 24, 2017 was, in fact, forwarded to SCI-Mahanoy upon receipt of same." (Id.) However, a motion to dismiss, unless converted to a motion for summary judgment, "is generally confined to the four corners of the complaint when evaluating its sufficiency. It must accept all facts alleged as true and, apart from narrow exceptions not relevant here, cannot rely on outside evidence the parties may introduce." See Tri3 Enters., LLC v. Aetna, Inc., 535 F. App'x 192, 195 (3d Cir. 2013). Plaintiff himself, in his amended complaint, alleges that Defendant Pujara sent the pathology report to Defendant Steinhart "by fax shortly after he received it on November 1, 2017" and that Defendant Rogers received the pathology report that same day. (Doc. No. 52 ¶ 70.) Moreover, the amended complaint alleges that it was individuals at SCI Mahanoy, not Defendant Pujara, who failed to upload the results from Plaintiff's biopsy to his medical file. Furthermore, while Plaintiff faults Defendant Pujara for not transmitting the Procedure Note and Solid Tumor Immunohistochemical Analysis Report to Defendant Steinhart in a timely manner (id. ¶ 37), the first Pabon element "preclude[s] liability in cases where a prisoner may not have received all conceivable information regarding a particular treatment but a reasonable person would not find the missing information necessary to a decision regarding whether to go forward. See Pabon, 459 F.3d at 250. For these additional reasons, Plaintiff's Fourteenth Amendment claim against Defendant Pujara is subject to dismissal.

582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs. See Farmer, 511 U.S. at 834, 837; Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Rouse, 182 F.3d at 197.

Because only egregious acts or omissions may violate this standard, mere medical malpractice will not result in an Eighth Amendment violation. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights."). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician. See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v.

Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference.  See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Moreover, a prison doctor's use of a treatment regimen different than that prescribed by a private physician does not necessarily amount to deliberate indifference.  See Johnson v. Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (citing McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)).  The question is, therefore, "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants."  See Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

Defendant Pujara maintains that Plaintiff's amended complaint "deletes the factual predicate that formed the basis for this Honorable Court's holding in denying [his] previous Motion to Dismiss."  (Doc. No. 56 at 16.)  Defendant Pujara points out that Plaintiff "no longer alleges that [Defendant] Pujara failed to transmit his biopsy pathology report to SCI-Mahanoy. Rather, Plaintiff concedes that [Defendant] Pujara transmitted the pathology report the day following receipt of same and assigns the fault for any delay(s) to officials at SCI-Mahanoy." (Id.)  The Court agrees with Defendant Pujara for the reasons discussed below.

While the "failure to transfer necessary medical records in a timely fashion" can constitute deliberate indifference, see Brown v. Coughlin, 758 F. Supp. 876, 882 (S.D.N.Y. 1991), as noted supra, Plaintiff's amended complaint clearly alleges that Defendant Pujara transmitted the pathology report to SCI Mahanoy shortly following receipt of same.  (Doc. No. 52 ¶¶ 24, 70.)  Moreover, Plaintiff alleges that Defendant Rogers had the pathology report as of

November 1, 2017.  (Id. ¶ 70.)  The amended complaint sets forth that it was individuals at SCI Mahanoy, not Defendant Pujara, who failed to upload the results to Plaintiff's medical file.  Moreover, Plaintiff avers that he was scheduled to see Defendant Pujara for a follow-up appointment on November 7, 2017, but that he was transferred to New York prior to that date.  (Id. ¶¶ 21, 25, 29.)  Moreover, while Plaintiff faults Defendant Pujara for not timely transmitting the Procedure Note and the Solid Tumor Immunohistochemical Analysis Report to SCI Mahanoy (id. ¶¶ 37, 42-43), a review of these documents, which Plaintiff provides as exhibits to his amended complaint, indicates that the Procedure Note is a summary of Plaintiff's biopsy procedure and that the Solid Tumor Immunohistochemical Analysis Report confirmed the diagnosis contained in the pathology report (Doc. No. 47 at 1-2, 4, 10-11.)  Finally, Plaintiff alleges that when asked to do so by staff at SCI Mahanoy, Defendant Pujara provided a duplicate copy of the pathology report as well as the Procedure Note and the Solid Tumor Immunohistochemical Analysis Report.  (Id. ¶ 42.)  Nothing in the amended complaint plausibly suggests that the delay Plaintiff experienced in receiving treatment for his prostate cancer can be attributed to the actions of Defendant Pujara.  See Rouse, 182 F.3d at 197 (noting that deliberate indifferences may exist when an official delays necessary medical treatment or prevents a prisoner from receiving needed or recommended treatment).  Accordingly, the Court will grant Defendant Pujara's motion to dismiss with respect to his Eighth Amendment claim.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Pujara's motion to dismiss (Doc. No. 55) will be granted.  An appropriate Order follows.